IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

NATALIE STAFFORD, as conservator
of RICHARD STAFFORD                                                          PLAINTIFF

V.                                                       CAUSE NO.: 1:11CV13-SA-DAS

CITY OF WEST POINT, MISSISSIPPI, et al.                              DEFENDANTS

MEMORANDUM OPINION

Officers Mark Stafford and Stanley McGee have moved for dismissal of Plaintiff's suit against them in their individual capacities. The officers contend they are shielded by qualified immunity.

After reviewing the motion, responses, rules and authorities, the Court makes the following findings:

*Factual and Procedural Background*

In the early morning hours of January 14, 2010, Officers Mark Stafford and Stanley McGee responded to a dispatch regarding a disturbance at 133 Waverly in West Point, Mississippi. Upon arriving at the residence, the officers noted that alcohol was present in the townhouse. Plaintiff contends that Officer Mark Stafford told her minor son, Richard, to get into his vehicle and drive home.

At the alleged direction of Officer Stafford, Richard Stafford got into his vehicle, and drove for approximately thirty-five minutes before he was involved in a single car accident which caused serious and long-lasting injuries. Stafford's blood alcohol level near the time of the accident was 0.11 percent.

Natalie Stafford, Richard's mother and conservator, brought this lawsuit pursuant to 42 U.S.C. § 1983 alleging that Officers Mark Stafford and Stanley McGee, along with other defendants,

infringed on Richard Stafford's substantive due process rights, equal protection rights, and right to be free from unreasonable seizures.[1]  Plaintiff also alleges causes of action for state law torts against the City of West Point.  Defendants assert that, in their individual capacities, they are protected by qualified immunity.

*Summary Judgment Standard*

On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("the burden on the moving party may be discharged by 'showing'. . . that there is an absence of evidence to support the non-moving party's case"). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (quoting FED. R. CIV. P. 56(e)).  The non-movant's burden is not discharged by "mere allegations or denials." FED. R. CIV. P. 56(e).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. 2548.

*Discussion and Analysis*

It is well settled that "individual liability under Section 1983 may not be predicated on the doctrine of respondeat superior," and that "[o]nly the direct acts or omissions of government

---

[1] Plaintiff also pled an Eighth Amendment right to be free from cruel and unusual punishment, but waived that claim in her response to the Defendants' summary judgment motion.

officials . . . will give rise to individual liability under Section 1983." Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 534 (5th Cir. 1997) (citing Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 452 (5th Cir. 1994)). Simply put, in order to demonstrate liability against any of the moving defendants, Plaintiff must provide competent evidence that the individual personally engaged in an activity that led to the alleged constitutional deprivations.

Plaintiff has failed to put forth evidence that Officer Stanley McGee caused any constitutional deprivation by his acts or omissions. McGee testified that he was on scene in the early morning hours of January 14, 2010. Plaintiff alleges that Officer Stafford spoke with her son and directed him to drive. There is no proof in the record that McGee spoke with any male at the residence. McGee's presence at 133 Waverly on January 14, 2010, is not enough to establish a constitutional violation. Thus, the Court dismisses Plaintiff's claims against McGee in his individual capacity. Even if the Plaintiff had alleged facts implicating Stanley McGee, that defendant is entitled to qualified immunity as discussed below.

Law enforcement officials, "like other public officials acting within the scope of their official duties, are shielded from claims of civil liability, including § 1983 claims, by qualified immunity." Morris v. Dillard Dept. Stores, Inc., 277 F.3d 743, 753 (5th Cir. 2001). Qualified immunity is a shield from individual liability for "'government officials performing discretionary functions . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" Good v. Curtis, 601 F.3d 393, 400 (5th Cir. 2010) (quoting Anderson v. Creighton, 483 U.S. 635, 638, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). "[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.'" Id. (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)).

When a defendant asserts qualified immunity, the plaintiff has the burden to rebut the defense. Hampton v. Oktibbeha Cnty. Sheriff Dep't, 480 F.3d 358, 363 (5th Cir. 2007). In determining whether qualified immunity exists in the summary judgment posture, the Court "'looks to the evidence before it (in the light most favorable to the plaintiff) . . . .'" McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (quoting Behrens v. Pelletier, 516 U.S. 299, 309, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996)).

Courts use a two-step analysis to determine whether qualified immunity applies. "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation." Collier v. Montgomery, 569 F.3d 214, 217 (5th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). Second, if a violation has been alleged, the court must determine "'whether [the officer's] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'" Id. (quoting Freeman v. Gore, 483 F.3d 404, 411 (5th Cir. 2007)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202, 121 S. Ct. 2151. See also Wernecke v. Garcia, 591 F.3d 386, 392 (5th Cir. 2009) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken.")

"The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." Thompson v. Upshur

4

Cnty., Tex., 245 F.3d 447, 457 (5th Cir. 2001). Thus, "[a]n official is eligible for qualified immunity even if the official violated another's constitutional rights." Id. Whether the official acted with objective reasonableness is an issue of law reserved for the court. Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999). "When considering a defendant's entitlement to qualified immunity, we must ask whether the law so clearly and unambiguously prohibited his conduct that 'every reasonable official would understand that what he is doing violates [the law].'" Morgan v. Swanson, --- F.3d ---, 2011 U.S. App. LEXIS 19656, 2011 WL 4470233 at *7 (5th Cir. Sept. 27, 2011) (citing Ashcroft v. Al-Kidd, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011)).

It is within the lower court's discretion to decide which prong of the qualified immunity analysis to address first. Collier, 569 F.3d at 217 (quoting Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). In particular, the Supreme Court noted that "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." Pearson, 555 U.S. at 237, 129 S. Ct. 808.

*A. Substantive Due Process*

Plaintiff claims that the officers denied Richard Stafford his substantive due process rights by acting with deliberate indifference to his rights and safety at a time when they knew, or should have known, that their actions would result in serious bodily harm. In particular, Plaintiff alleges that by requiring Richard Stafford to leave the premises in his vehicle, the officers infringed on his constitutional rights.

To state a claim for a due process violation, a plaintiff must establish a "recognized 'liberty or property' interest within the purview of the Fourteenth Amendment, and that he was intentionally or recklessly deprived of that interest, even temporarily, under color of state law." Griffith v.

5

Johnston, 899 F.2d 1427, 1435 (5th Cir. 1990). As a general rule, however, there is no constitutional duty that requires state officials to protect persons from private harms. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989); Kovacic v. Villarreal, 628 F.3d 209, 213 (5th Cir. 2010). The Supreme Court in DeShaney did recognize an exception to this general rule when there is a "special relationship" between the individual and the state. Id. at 262, 109 S. Ct. 998. This relationship is formed "[w]hen the state, through the affirmative exercise of its powers, acts to restrain an individual's freedom to act on his own behalf 'through incarceration, institutionalization, or other similar restraint of personal liberty.'" McClendon, 305 F.3d at 324 (quoting DeShaney, 489 U.S. at 262, 109 S. Ct. 998).

Here, Plaintiff claims a substantive due process violation in that the officers had a "special relationship" and duty to protect Richard Stafford. "[A] 'special relationship' arises between a person and the state only when this person is involuntarily confined against his will through the affirmative exercise of state power." Walton v. Alexander, 44 F.3d 1297, 1306 (5th Cir. 1995). Absent this "special relationship," "the state has no duty to protect nor liability from failing to protect a person under the due process clause of the Fourteenth Amendment from violence at the hands of a private actor." Id. The Fifth Circuit has cautioned against

> extending the Due Process Clause to impose on the state the obligation to defend and to pay for the acts of non-state third parties [as] a burden not supported by the text or history of the Clause, nor by general principles of constitutional jurisprudence. Such an expansion of the state's liability for acts of third parties only can make constitutional sense--that is, holding a government accountable and liable for its official actions--when the state has effectively taken the plaintiff's liberty under terms that provide no realistic means of voluntarily terminating the state's custody and which thus deprives the plaintiff of the ability or opportunity to provide for his own care and safety. It is under such extreme circumstances that the state itself, by its affirmative act and pursuant to its own will, has effectively used its power to force a "special relationship," with respect to which it assumes a certain liability.

6

Walton , 44 F.3d at 1305.

Richard Stafford was never "involuntarily confined" in order to establish a special relationship to the officers. To the extent that Plaintiff argues that Richard Stafford was "confined" into driving his vehicle away from the residence, he was not unable to voluntarily care for himself. At worst, he could drive his car out of the parking lot and pull over. This is not a substantive due process violation as contemplated by the Fourteenth Amendment. No duty to protect Richard Stafford arose as no special relationship was established because that individual's liberty was never limited. Consequently, because the officers' alleged failure to protect Stafford did not violate the Due Process Clause, we hold that they are entitled to qualified immunity from this suit.

Even if Stafford was "confined" as contemplated by DeShaney, the officers would still be entitled to qualified immunity as no reasonable officer would understand ordering a person to get into his vehicle and leave the premises would violate the Constitution. See Anderson, 483 U.S. 635, 107 S. Ct. 3034 (a constitutional right is clearly established for the purposes of Section 1983 only if the law is clear enough such that "a reasonable official would understand that what he is doing violates that right."). Thus, Plaintiff has failed to establish that ordering Stafford to get into his vehicle and leave the premises was a clearly defined violation of his substantive due process rights.

Constitutional guarantees limiting the State's power to deprive an individual's life, liberty, or property do not in any way guarantee certain minimal levels of individual safety. DeShaney, 489 U.S. at 195, 109 S. Ct. 998. Even if officers could arrest an individual, they have no constitutional obligation to do so to protect him from himself or others. Id.; see also McKee v. City of Rockwall, Tex., 877 F.2d 409, 413 (5th Cir. 1989) ("This is the lesson of DeShaney: that law enforcement officers have authority to act does not imply that they have any constitutional duty to act."). Thus,

the officers are entitled to qualified immunity.

Plaintiff additionally argues that summary judgment is inappropriate pursuant to a state-created danger theory of constitutional violation. Courts which adhere to that doctrine interpret DeShaney to allow a second exception to the rule against state liability for violence committed by private actors in situations where "the state actor played an affirmative role in creating or exacerbating a dangerous situation that led to the individual's injury." McClendon, 305 F.3d at 324. The Fifth Circuit has not adopted the "state-created danger" theory of liability. See Kovacic, 628 F.3d at 214; Bustos v. Martini Club, Inc., 599 F.3d 458, 466 (5th Cir. 2010); Rios v. City of Del Rio, 444 F.3d 417, 422 (5th Cir. 2006). As such, the analysis of whether the officers put Richard Stafford in a more vulnerable position than he would have been otherwise is not applicable in this circuit and would not put the officers on reasonable notice of a constitutional violation. See Kovacic, 628 F.3d at 214.

### *B. Equal Protection*

To demonstrate an equal protection claim, a plaintiff must provide evidence that a state actor intentionally discriminated against him because of membership in a protected class or that he has been intentionally treated differently from others similarly situated, and there is no rational basis for the disparate treatment. See Williams v. Bramer, 180 F.3d 699, 705 (5th Cir. 1999); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).

Richard Stafford is not a member of a protected class - - he is a white male. Next, Plaintiff has unquestionably failed to demonstrate that Richard Stafford was intentionally treated differently than others similarly situated. In fact, Plaintiff has not offered any evidence of any other person "similarly situated" to him, much less that Richard Stafford was intentionally treated differently than

8

such persons. The complete absence of record evidence to support an Equal Protection Claim alone requires the court to dismiss it.

Even if Plaintiff did establish a constitutional violation based on the "class of one" theory, the officers had a rational basis for requiring him to leave the premises, even if they required him to drive his vehicle to leave. The son of the owner of the townhouse allegedly pointed out Stafford as the male causing the disturbance that January morning. He specifically asked the officers to make Stafford leave the premises. Accordingly, the officers were justified in asking that individual to leave the private property as requested by the owner of that property. The officers testified that they were unaware Richard Stafford had been drinking or was underage. They did not ask for or receive names of any of the parties involved in the disturbance at 133 Waverly. Moreover, the officers both testified that they did not see Stafford leave the parking lot in his vehicle. Accordingly, Plaintiff's Equal Protection claim against the officers in their individual capacities is dismissed.

*C. Unreasonable Seizure*

The Supreme Court has defined a "seizure" under the Fourth Amendment as a "means of physical force or show of authority, . . . in some way restraining the liberty of a citizen." Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Plaintiff alleges that Officers Stafford and McGee seized Richard Stafford by forcing him to drive his vehicle in an inebriated state. Officer Stafford admitted to telling a male identified as the disturbance at 133 Waverly to leave more than once. Natalie Stafford contends she heard what she assumed to be an officer tell Stafford to get in his truck and leave. The Court finds that Richard Stafford was not "seized" as contemplated by the Fourth Amendment. The officers testified that they were not aware of what kind of vehicle Richard Stafford was driving. Moreover, they testified that they left the

9

premises prior to Richard Stafford leaving. The officers did not stay at the residence to make sure that Richard Stafford followed through on the order. Thus, there was no seizure, and no constitutional violation.

Even if an appellate court deemed this to be a constitutional violation, it is not a clearly established constitutional violation such that a reasonable officer would know that by directing Richard Stafford to get into his vehicle and leave the premises, he was effectuating an unreasonable seizure. Therefore, the individual capacity claims for unreasonable seizure against the officers is dismissed.

*D. State Law Immunity*

Plaintiff's Complaint does not allege Mississippi Tort Claims violations against the individual officers. Accordingly, it is unnecessary for the Court to engage in state law immunity analysis as to the officers.

*Conclusion*

Defendants' Motion for Summary Judgment [25] is GRANTED. Plaintiff's due process, equal protection, and unreasonable seizure claims against Officers Stafford and McGee in their individual capacities are dismissed.

SO ORDERED, this the 30th day of March, 2012.

                                                 **/s/ Sharion Aycock**
                                                 **U.S. DISTRICT JUDGE**